FILED
SEP 2 3 2005
JUDGE CHARLES R. NORGLE
U.S. District Court Judge

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | No. 05 CR 784 |
| ) | Judge |
| DENNIS MADDEN ) | |

## PLEA AGREEMENT

This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and the defendant, DENNIS MADDEN, and his attorney, SCOTT J. FRANKEL, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure.

This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 05 CR 784.

This Plea Agreement concerns criminal liability only, and nothing herein shall limit or in any way waive or release any administrative or judicial civil claim, demand or cause of action, whatsoever, of the United States or its agencies. Moreover, this Agreement is limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities except as expressly set forth in this Agreement.

By this Plea Agreement, PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, and the defendant, DENNIS MADDEN, and his attorney, SCOTT

J. FRANKEL, have agreed upon the following:

1. Defendant acknowledges that he has been charged in the information in this case with failing to collect, account for, and pay withholding taxes in violation of Title 26, United States Code, Section 7202, and filing a false tax return for the calendar year 2000 in violation of Title 26, United States Code, Section 7206(1).

2. Defendant has read the charges against him contained in the information, and that those charges have been fully explained to him by his attorney.

3. Defendant fully understands the nature and elements of the crimes with which he has been charged.

4. Defendant will enter a voluntary plea of guilty to each of the two counts of the information in this case.

5. Defendant will plead guilty because he is in fact guilty of the charges contained in the information. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

## Count One - Failure Account and Pay Taxes

Beginning at least January 2001 and continuing through approximately December 31, 2001, he was the president of Integrated Network Technology, Inc., ("INT"), a corporation located in Wheeling, Illinois, engaged in providing technology services to other businesses. INT employed approximately ten individuals in addition to defendant DENNIS MADDEN during calendar year 2001.

Defendant and his corporation were required to collect, account for, and pay over federal income tax withholdings, Federal Insurance Contribution Act ("FICA") taxes and Medicare withholdings for all employees on a quarterly basis within 30 days of the end of each quarter. The second quarter of INT's business in 2001, ended on June 30, 2001, and DENNIS MADDEN had the responsibility to collect, account for, and pay over to the Internal Revenue Service approximately $70,792 in federal income tax withholdings, FICA taxes and Medicare withholdings due and owing to the United States of America for that quarter on or about July 31, 2001. DENNIS MADDEN willfully failed to collect and pay over such taxes despite reporting to his employees that he had done so, and issued Forms W-2 to his employees which falsely represented that such taxes had been paid over to the Internal Revenue Service.

**Count Two - False Tax Return**

On or about April 15, 2002, in Riverwoods, Illinois, defendant willfully made and subscribed a United States Income Tax Return (Form 1040 with schedules and attachments) for the calendar year 2000, which return was verified by a written declaration that it was made under penalties of perjury, and was filed with the Internal Revenue Service. Defendant, a resident of Riverwoods, Illinois, knew when he made and subscribed to his return filed on or about April 15, 2002, that such return contained false statements with respect to material matters, to wit: defendant falsely reported on Line 22 that his total income was $1,864, whereas he knew that he had received substantial additional income of

approximately $105,396 from consulting work he provided, which should have been reported on his income tax return. For calendar year 2000, defendant admits this unreported income resulted in a federal tax loss of $24,148.

6.  The defendant also acknowledges that for the purpose of computing his sentence under the U.S. Sentencing Guidelines, the following conduct, to which he stipulates, constitutes relevant conduct under Section 1B1.3:

During calendar year 2001, defendant DENNIS MADDEN was the president of INT, and had the responsibility to collect, account for, and pay over to the Internal Revenue Service federal income tax withholdings, FICA taxes and Medicare withholdings due and owing to the United States of America for first quarter of 2001. DENNIS MADDEN willfully failed to collect and pay over such taxes which totaled approximately $52,223 despite reporting to his employees that he had done so, and issued Forms W-2 to his employees which falsely represented that such taxes had been paid over to the Internal Revenue Service.

For the calendar years 1999 and 2000, defendant DENNIS MADDEN operated a business known as Power User Technologies, Inc., ("PUT") through a nominee. As the person in charge and control of PUT, and had the responsibility to collect, account for, and pay over to the Internal Revenue Service federal income tax withholdings, FICA taxes and Medicare withholdings due and owing to the United States of America for the fourth quarter of 1999 and the second and fourth quarters of 2000. DENNIS MADDEN willfully failed to

collect and pay over such taxes which totaled approximately $99,315 despite reporting to PUT employees that the company had done so, and caused to be issued Forms W-2 to PUT employees which falsely represented that such taxes had been paid over to the Internal Revenue Service.

Therefore, for purposes of applying the guidelines promulgated by the United States Sentencing commission defendant's total tax loss for the years 1999 through 2001 is $246,478.

7. For purposes of applying the guidelines promulgated by the United States Sentencing Commission pursuant to Title 28, United States Code, Section 994, the parties agree on that the Guidelines effective November 1, 2004 apply. The parties further agree on the following points:

(a) Pursuant to USSG §§ 2T1.1(a)(1) and 2T4.1, because the tax loss of $246,478 is more than $200,000 but less than $400,000, the base offense level 18.

(b) Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if the defendant continues to accept responsibility for his actions, within the meaning of Guideline 3E1.1, a two-level reduction in the offense level is appropriate.

(c) Defendant has provided timely complete information concerning his own involvement in the offense, and notified the government timely of his intention to enter

a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently, within the meaning of Guideline 3E1.1(b); an additional one-point reduction in the offense level is therefore appropriate, provided the Court determines the offense level to be 16 or greater prior to the operation of Guideline 3E1.1(a).

(d)     Based on the facts known to the government and defendant, the defendant's criminal history points equal 0 and the defendant's criminal history category is I; and

(e)     The defendant and his attorney and the government acknowledge that the above calculations are preliminary in nature and based on facts known to the government as of the time of this Agreement. The defendant understands that the Probation Department will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Sentencing Guidelines calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations.

8.     Errors in calculations or interpretation of any of the guidelines may be corrected by either party prior to sentencing. The parties may correct these errors or misinterpretations either by stipulation or by a statement to the probation office and/or Court setting forth the disagreement as to the correct guidelines and their application. The validity of this Agreement will not be affected by such corrections, and the defendant shall not have

a right to withdraw his plea on the basis of such corrections.

9. Defendant understands that, in imposing the sentence, the Court will be guided by the United States Sentencing Guidelines. The defendant understands that the Guidelines are advisory, not mandatory, but that the Court must consider the guidelines in determining a reasonable sentence.

10. Defendant understands the counts to which he will plead guilty carry the following penalties:

(a) Count One carries a maximum penalty of five years imprisonment, a maximum fine of $250,000, together with costs of prosecution.

(b) Count Two carries a maximum penalty of three years imprisonment and a maximum fine of $250,000, together with costs of prosecution.

(c) Defendant understands these counts also carry a term of supervised release of not more than three years on Count One and not more than one year on Count Two, which the Court may specify.

Therefore, the total potential sentence carried under the counts to which defendant will plead guilty is 8 years imprisonment, a $500,000 fine, a term of supervised release, together with costs of prosecution, estimated to be $500.

11. The defendant understands that in accord with federal law, Title 18, United States Code, Section 3013, upon entry of judgment of conviction, the defendant will be assessed $100 on Counts One and Two to which he has pled guilty, in addition to any other

penalty imposed. The defendant agrees to pay the special assessment of $200 at the time of sentencing with a check or money order made payable to the Clerk of the U. S. District Court.

12. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

(a) If defendant persisted in a plea of not guilty to the charges against him, he would have the right to a public and speedy trial. The trial could be either a jury trial or a trial by the judge sitting without a jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

(b) If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random. Defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising so-called peremptory challenges. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that defendant is presumed innocent, and that it could not convict him unless, after hearing all the evidence, it was persuaded of defendant's guilt beyond a reasonable doubt.

(c) If the trial is held by the judge without a jury, the judge would find the

facts and determine, after hearing all the evidence, whether or not the judge was persuaded of defendant's guilt beyond a reasonable doubt.

(d) At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them. In turn, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court.

(e) At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

(f) Defendant understands that he has a right to have the charge prosecuted by an indictment returned by a concurrence of twelve or more members of a legally constituted grand jury consisting of not less than sixteen and not more than twenty-three members. By signing this Agreement, defendant knowingly waives his right to be prosecuted by indictment and to assert at trial or on appeal any defects or errors arising from the information, the information process, or the fact that he has been prosecuted by way of information.

13. Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraph. Defendant's attorney has explained those rights to him, and the

consequences of his waiver of those rights. Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial.

14. Defendant is also aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging this, the defendant knowingly waives the right to appeal any sentence within the maximum provided in the statute(s) of conviction or the manner in which that sentence was determined, in exchange for the concessions made by the United States in this Plea Agreement. The defendant also waives his right to challenge her sentence or the manner in which it was determined in any collateral attack, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or to its negotiation.

15. Nothing in this Agreement shall limit the Internal Revenue Service in its collection of any taxes, interest or penalties from the defendant or his corporations. Defendant further understands that the amount of tax as calculated by the Internal Revenue Service may exceed the amount of tax due as calculated for the criminal case.

(a) Defendant agrees to transmit his original records, including those of INT and PUT, or copies thereof, and any additional books and records which may be helpful, to the Examination Division of the Internal Revenue Service so that the Internal Revenue Service can complete its civil audit of defendant, and his businesses for the years 1999

through 2001.

(b) Preliminary to or in connection with any judicial proceeding, as that term is used in F.R.Cr. P. 6(e), defendant will interpose no objection to the entry of an order under Rule 6(e) authorizing disclosure of those documents, testimony and related investigative materials which may constitute grand jury material. Defendant will not object to the government soliciting consent from third parties, who provided information to the grand jury pursuant to grand jury subpoena, to turn those materials over to the Civil Division, appropriate federal or state administrative agency or the Internal Revenue Service, for use in civil or administrative proceedings or investigations, rather than returning them to such third party for later summons or subpoena in connection with the civil case or collection of taxes from defendant.

16. The United States agrees not to seek additional criminal charges against defendant in the Northern District of Illinois for the events between 1997 and 2003, which occurred in the Northern District of Illinois, and that he described in a proffer he provided to the United States. However, nothing in this Agreement limits the United States in a prosecution of defendant in other districts or for crimes not disclosed in his proffer.

17. Defendant understands that the information and this Plea Agreement are matters of public record and may be disclosed to any party.

18. Defendant understands that the United States Attorney's Office will fully apprise the District Court and the United States Probation Office of the nature, scope and

extent of defendant's conduct regarding the charge against him, and related matters, including all matters in aggravation and mitigation relevant to the issue of sentencing.

19. At the time of sentencing, the parties are free to recommend any sentence they deem appropriate.

20. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose the maximum penalties as set forth in paragraph 10 above. However, the sentencing court is obligated to consult and take into account the Sentencing Guidelines in imposing a reasonable sentence.

21. The parties agree that restitution is not applicable in this case.

22. The defendant understands that U.S.S.G. §5E1.2 sets forth the factors to be weighed in setting a fine. Defendant agrees to provide full and truthful information to the Court and the United States Probation Officer regarding all details of his economic circumstances. Defendant understands that providing false or incomplete information may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of court, and would constitute a breach of this plea agreement.

23. Defendant understands that his compliance with each part of this Plea Agreement extends throughout and beyond the period of his sentence, and failure to abide by any term of the Plea Agreement is a violation of the Agreement. He further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Plea Agreement, rendering it null and void, and thereafter prosecute the defendant

not subject to any of the limits set forth in this Agreement, or to resentence the defendant. The defendant understands and agrees that in the event that this Plea Agreement is breached by the defendant, and the Government elects to void the Plea Agreement and prosecute the defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against the defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this agreement and the commencement of such prosecutions.

24.  Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

25.  Defendant agrees this Plea Agreement shall be filed and become a part of the record in this case.

26.  Should the judge refuse to accept the defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound thereto.

27.  Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 9-23-05

_____  
PATRICK J. FITZGERALD  
United States Attorney

_____  
DENNIS MADDEN  
Defendant

_____  
PATRICK J. KING, JR.  
Assistant United States Attorney

_____  
SCOTT J. FRANKEL  
Attorney for Defendant